**BROWN KWON & LAM LLP**
William Brown, Esq.
275 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
wbrown@bkllawyers.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BLEDI MUCAJ, GEZIM MUCAJ and DIJANA MUCAJ, individually and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **No:** |
| **- against -** | **COLLECTIVE ACTION COMPLAINT** |
| **LA FRANCE, LLC, SUBBA REDDY and CHITTEMMA REDDY,** | |
| **Defendants.** | |

Plaintiffs BLEDI MUCAJ, GEZIM MUCAJ and DIJANA MUCAJ ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to themselves, and upon information and belief as to other matters, by and through his undersigned attorneys, hereby files this Collective Action Complaint against Defendants, LA FRANCE, LLC (hereinafter, "Corporate Defendant"), SUBBA REDDY and CHITTEMMA REDDY (hereinafter, "Individual Defendants," and together with Corporate Defendant, "Defendants") and alleges as follows:

**INTRODUCTION**

1.      Plaintiffs brings this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

1

("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid minimum wages (2) unpaid overtime wages, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs also brings this action pursuant to the New York Labor Law ("NYLL") Article 6, §§ 190 *et seq*., and Article 19, §§ 650 *et seq*., the supporting New York State Department of Labor Regulations, seeking from Defendants: (1) unpaid minimum wages (2) unpaid overtime wages, (2) stautory penalties, (3) liquidated damages, and (4) attorneys' fees and costs.

3.      Plaintiffs further seek damages from Defendants as a result of Defendants being unjustly enriched by renovations performed by Plaintiffs on one of Defendants' apartment units.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

8.      Plaintiff BLEDI MUCAJ is an adult who resides in Queens, New York.

9.      Plaintiff GEZIM MUCAJ is an adult who resides in Queens, New York.

10.     Plaintiff DIJANA MUCAJ is an adult who resides in Queens, New York.

11.     Plaintiffs are covered employee within the meaning of the FLSA and NYLL.

12.     Plaintiff retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and have agreed to pay the firm a reasonable fee for its services.

## _Defendants_

### *LA FRANCE, LLC*

13.     Corporate Defendant LA FRANCE, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 12A Commercial Street, Hicksville, NY 11801 and an address for service of process located at 18R Laurel Avenue, c/o Francis P. Hill, Glen Cove, NY 11542.

14.     At all relevant times, Defendant LA FRANCE, LLC owned and operated a residential building located at 118-65 Metropolitan Avenue, Kew Gardens, New York 11415 (the "Building").

15.     LA FRANCE, LLC is a covered employer within the meaning of the NYLL, and, at all relevant times, has employed Plaintiffs.

16.     At all relevant times, Corporate Defendant LA FRANCE, LLC had an annual dollar volume of sales in excess of $500,000.

17.     Corporate Defendant LA FRANCE, LLC is a covered "employer" within the meaning of the FLSA and NYLL.

18.     Corporate Defendant LA FRANCE, LLC employed Plaintiff and similarly situated employees.

19.     At all relevant times, Corporate Defendant LA FRANCE, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

20.     At all relevant times, Corporate Defendant LA FRANCE, LLC applied the same employment policies, practices and procedures to all its non-exempt employees.

*SUBBA REDDY*

21.     At all relevant times, Individual Defendant SUBBA READY has been an owner and operator a number of residential buildings across Queens, New York, and has been an owner and operator of La France, LLC.

22.     At all relevant times, SUBBA REDDY has been a principal of the Corporate Defendant.

23.     At all relevant times, SUBBA REDDY has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment.

24.     At all relevant times, SUBBA REDDY has had the power to maintain employment records, including time and/or wage records of employees.

25.     At all relevant times, SUBBA REDDY has been actively involved in managing the day-to-day operations at the Building as well as other residential buildings across Queens, New York.

26.     At all relevant times, SUBBA REDDY has had authority over personnel or payroll decisions and employment policies, practices and procedures.

27.     At all relevant times, SUBBA REDDY has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs.

4

28.     SUBBA REDDY is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs.

***CHITTEMA REDDY***

29.     At all relevant times, Individual Defendant CHITTEMA READY has been an owner and operator a number of residential buildings across Queens, New York, and has been an owner and operator of La France, LLC.

30.     At all relevant times, CHITTEMA REDDY has been a principal of the Corporate Defendant.

31.     At all relevant times, CHITTEMA REDDY has had the power to (i) fire and hire employees, (ii) set their work schedules, (iii) determine their rate and method of pay, and (iv) otherwise control the terms and conditions of their employment.

32.     At all relevant times, CHITTEMA REDDY has had the power to maintain employment records, including time and/or wage records of employees.

33.     At all relevant times, CHITTEMA REDDY has been actively involved in managing the day-to-day operations at the Building as well as other residential buildings across Queens, New York.

34.     At all relevant times, CHITTEMA REDDY has had authority over personnel or payroll decisions and employment policies, practices and procedures.

35.     At all relevant times, CHITTEMA REDDY has had the power to prevent or stop any unlawful pay practices that harmed Plaintiffs.

36.     CHITTEMA REDDY is a covered employer within the meaning of the FLSA and NYLL, and, at all relevant times, has employed Plaintiffs.

37.     At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

38.     At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

39.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL

## FLSA COLLECTIVE ACTION ALLEGATIONS

40.     Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former superintendents, superintendent's helpers, mechanics, handymen, janitors, and all other non-exempt employees who performed building maintenance work  employed by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

41.     At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiff and FLSA Collective Members minimum wages and overtime wages for all hours worked in excess of forty (40) per workweek. Plaintiff's claims stated herein are essentially the same as those of the other FLSA Collective Members.

42.     All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

43.     Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

44.     For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

**STATEMENT OF FACTS**

45.     Around December 2020, Plaintiff, Bledi Mucaj ("Bledi"), was hired by Defendants to work as a live-in building superintendent for the Building, located at 118-65 Metropolitan Avenue, Kew Gardens, New York 11415.

46.     Plaintiff Bledi was interviewed for the position by Defendant, Subba Reddy. During that interview, Bledi told Defendant Subba Reddy that he lived with his mother, Dijana Mucaj ("Dijana") and his father Gezim Mucaj ("Gezim").  Subba Reddy then told Plaintiff that with other live-in superintendents, their families assisted with operation of the building, and told Bledi that his family should do the same.  Defendants were therefore not only on notice that all three Plaintiffs would be employed in the building, but strongly encouraged it.

47.     Throughout his employment with Respondents, Bledi was paid a fixed monthly salary of $1,200, semi-monthly, or approximately $276.92 per week.

48.     Bledi's $1,200 monthly salary was intended to compensate him for the upkeep and maintenance of the building, including, but not limited to pipe cleaning, performing plumbing repairs, electrical work, collecting rent from tenants, performing administrative work such as

making appointments with utility providers, as well as cleaning the common areas, removing rubbish, landscaping work, and clearing snow among other duties.

49.     In addition to his salary, Bledi was also paid additional fixed sums for performing certain tasks outside the scope of his regular duties, including, but not limited to, painting and cleaning apartments in preparation for incoming tenants and performing roof installation. Specifically, Bledi was paid $250 for a studio, $300 for a one-bedroom, and $350 for a two-bedroom, and was paid an additional sum of $1,200 for a roof installation job (this was well below market rate for such a job, with most roof repair/installation contractors quoting more than $5,000). However, such additional payments were relatively rare, and for the majority of weeks Plaintiff only received his base salary.

50.     In addition to performing work for 118-65 Metropolitan Avenue, Bledi also performed work in two other buildings owned and operated by Respondents, namely 83-16 Lefferts Boulevard and 83-34 Lefferts Boulevard.  In total, Bledi spent approximately 6-8 hours per week, but sometimes more, working in the other buildings performing tasks such as scheduling appointments with utility providers, assisting and collecting rent from tenants, scheduling maintenance and responding to emergency calls.

51.     In total, Bledi worked between 60-80 hours per week.  Plaintiff's hourly rate was therefore between $3.46 and $4.62 during weeks in which he was not paid additional sums for preparing apartments for new tenants.  Furthermore, Defendants failed to pay Bledi overtime premiums for work performed in excess of forty hours per week.

52.     Throughout the relevant period, Bledi's father, Gezim Mucaj, and mother, Dijana Mucaj, also worked for Defendants, yet did not receive any compensation.

53.     Bledi's father, Gezim, worked approximately 15-20 hours per week performing repairs and some maintenance work.  Bledi's mother, Dijana, worked approximately 20-30 hours per week performing janitorial work in the building.  Respondents knew that it took around 2-3 people to perform all of the work in the building, and were aware that Gezim and Dijana Mucaj were working in the building without any compensation.

54.     Bledi Mucaj was terminated without cause on February 8, 2022.  Following his termination, Bledi was told he could temporarily stay in his unit for a few additional weeks if he assisted in training and translating for the new building superintendent.  During this period, Bledi worked around 20 hours per week, yet received no compensation.

55.     Furthermore, at his interview, Bledi was promised that he would live in unit 2C, a one-bedroom apartment, which could accommodate Bledi, his younger brother and his mother and father.

56.     Shortly before his anticipated move in date, Bledi was told that unit 2C was being rented out, and instead they would be moving into unit 1B, a small studio apartment.  It became immediately apparent that this apartment was nowhere near sufficient for a family of four, and lacked necessities, such as cooking gas.  Nonetheless, Plaintiffs had no choice but to reside in unit 1B for six months until the basement apartment became available.  However, even when the basement apartment did become available, in many respects it was worse than the studio. As soon as Plaintiffs moved in, it became apparent that the apartment posed multiple health and safety issues.  Namely, it was filled with garbage from the previous occupant and had serious moisture and mold issues.

57.     When Plaintiffs brought this to Defendants' attention, it was agreed that Defendants would pay to fully renovate the apartment.  However, Defendants only reimbursed Plaintiffs

$2,500.  Defendants continued to reassure Plaintiffs that they would be reimbursed for the cost of supplies, but Defendants failed to do so.

58.     Ultimately Plaintiffs ended up paying out of pocket for about $12,000 in materials, as well as dozens of hours of labor.  With the renovations nearly completed, Bledi's employment was terminated, and Plaintiffs were told that they would have to move out.  Defendants were therefore unjustly enriched by failing to reimburse Plaintiffs for the cost of the renovation and by requiring Plaintiffs to vacate the renovated apartment.

59.     Throughout his employment with Defendants, Plaintiffs did not receive proper notices of pay rate or pay day from Defendants at hire or before the changes in pay, as required under the NYLL.

60.     Throughout their employment with Defendants, Plaintiff did not receive wage statements from Defendants, as required by the NYLL.

61.     Based on Plaintiffs' observations and conversations with co-workers in other buildings owned and managed by Defendants, Defendants failed to pay Plaintiff, FLSA Collective Members the lawful minimum wage or pay overtime premiums for hours worked in excess of forty per work week.

62.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices to Plaintiffs pursuant to the requirements of the NYLL.

63.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements to Plaintiff and Class Members pursuant to the requirements of the NYLL.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
#### *Violation of the Fair Labor Standards Act*

64.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

65.     The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

66.     Pursuant to the FLSA  *et seq*., 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, Defendants are required to pay Plaintiffs and FLSA Collective Members the full minimum wage at a rate of $7.25.  Defendants failed to pay Plaintiffs and FLSA Collective Members the federal statutory minimum wage.

67.     Defendant failed to pay Plaintiff and FLSA Collective Members overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the FLSA.

68.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

69.     Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful minimum wage for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

70.     Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

71.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wages and overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

72.     Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

## SECOND CAUSE OF ACTION
### *Violations of the New York Labor Law*

73.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

74.     At all times relevant, Plaintiffs have been employees of Defendants, and Defendants have been employers of Plaintiffs within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

75.     Defendants failed to pay Plaintiffs the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

76.     Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiffs the full minimum wage at a rate of $15.00 per hour for all hours worked from December 31, 2018 through the present.

77.     Furthermore, under applicable New York State Department of Labor regulations, effective December 31, 2018, "janitors" who work for employers with eleven or more employees in New York City must be paid at least $10.00 per unit, per week.  As 118-65 Metropolitan Avenue has 52 units, Plaintiff Bledi Mucaj's minimum weekly salary was $520 per week.  Bledi was therefore paid less than the applicable New York State minimum wage rate.

78.     Defendant failed to pay Plaintiffs overtime wages for all hours worked in excess of forty (40) per workweek, to which they are entitled under the NYLL.

79.     Defendants failed to furnish Plaintiffs and the Class with proper wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.

80.     Defendants failed to furnish Plaintiffs with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

81.     Defendants failed to properly disclose or apprise Plaintiffs of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

82.     As a result of Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime wages, liquidated damages, statutory penalties, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

### THIRD CAUSE OF ACTION
### *Unjust Enrichment*

83.     Plaintiffs paid approximately $12,000 on materials and spent dozens of hours of labor time renovating an apartment unit owned by Defendants based on representations by Defendants that Plaintiffs would be reimbursed for the material costs and would be permitted to reside in the unit.

84.     Instead, Defendants only reimbursed Plaintiffs for a total of $2,500.  Furthermore, Defendants forced Plaintiffs to vacate the apartment with the reservations nearly complete, depriving them of any benefits of the time, expense and labor spent on the unit.

85.     The improvements made by Plaintiffs have greatly improved the value of the apartment unit, enriching Defendants at Plaintiffs' expense.

86.     As a result, Defendants have been unjustly enriched by Plaintiffs.  Defendants therefore seek damages equal to the cost of materials purchased by Plaintiffs, and the fair value of their labor time, in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and FLSA Collective Members, respectfully requests that this Court grant the following relief:

a. Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b. An award of unpaid overtime wages due under the FLSA and NYLL;

c. An award of unpaid minimum wage due under the FLSA and NYLL;

d. An award of liquidated damages as a result of Defendants' willful failure to pay overtime and minimum wages pursuant to the FLSA or NYLL;

e. Statutory penalties for Defendants' failure to provide Plaintiffs with proper wage notices, as required by the NYLL;

f. Statutory penalties for Defendants' failure to provide Plaintiffs with proper wage statements, as required by the NYLL;

g. An order awarding relief for unjust enrichment;

h. Pre-judgment and post-judgment interest;

i. Reasonable attorneys' fees and costs of this action;

j. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

k. An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

l. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demands trial by jury on all issues so triable as of right by jury.

Dated:  August 10, 2022          Respectfully submitted,

                                 **BROWN, KWON & LAM LLP**

                        By:      _/s/ William Brown_____

                                 William Brown, Esq.
                                 521 Fifth Avenue, 17th Floor
                                 New York, NY 10175
                                 Tel.: (212) 295-5825
                                 Fax: (718) 795-1642
                                 wbrown@bkllawyers.com
                                 _Attorneys for Plaintiff_

## <u>CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT</u>

I, BLEDI MUCAJ hereby consent to be a party plaintiff pursuant to 29 U.S.C. § 216(b), in an

action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., against LA FRANCE, LLC,

SUBBA REDDY and CHITTEMMA REDDY, and/or related entities and individuals to recover

unpaid wages, liquidated damages, and other damages and relief available under the Fair Labor

Standards Act.



Name: BLEDI MUCAJ

Date: _____7/30/2022_____